IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN HILL, | ) |
| | ) 2:09-cv-01565-GEB-GGH |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER GRANTING DEFENDANTS' |
| | ) MOTION FOR SUMMARY JUDGMENT[*] |
| COUNTY OF SACRAMENTO, ROGER | ) |
| DICKINSON, ROBERTA MACGLASHAN, | ) |
| SUSAN PETERS, JIMMIE YEE, DON | ) |
| NOTTOLI, SACRAMENTO COUNTY | ) |
| AIRPORT SYSTEM, and G. HARDY | ) |
| AGREE | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

      Defendants move for summary judgment on Plaintiff Ann Hill's Complaint. Plaintiff alleges in her Complaint that Defendants refused to allow her to continue operating her Java City food and beverage concession at the Sacramento County International Airport because of her African-American race, and that Defendants failed to comply with federal regulations requiring them to promote participation of "socially and economically" disadvantaged business concessionaires at the airport.

## I. Legal Standard

      A party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue as to any material fact concerning issues on which summary judgment is sought. Celotex Corp. v.

---

[*] This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

Catrett, 477 U.S. 317, 323 (1986). If this burden is satisfied, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(quotations and citation omitted)(emphasis omitted). Defendants "must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry [her] ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000)(citations omitted). "Where disputed issues of material fact exist, we assume the version of the material facts asserted by the non-moving party. All reasonable inferences must be drawn in favor of the non-moving party." Bryan v. McPherson, 608 F.3d 614, 619 (9th Cir. 2010)(citations omitted).

**II. Summary Judgment Factual Record and Procedural History**

Defendant County of Sacramento ("the County") owns and operates the Sacramento County International Airport ("Sacramento Airport"). (Defs.' SUF ¶ 1.) Defendant Sacramento County Airport System ("SCAS") is a department within the County responsible for operating, maintaining, and developing the Sacramento Airport. Id. ¶ 2. The non-entity Defendants are the County's employees. (Pl.'s Compl. ¶¶ 8-9.) SCAS out-sources operations for most of the Sacramento Airport's food and beverage concessions to HMSHost Corporation ("Host") and has done so since at least 1970. (Defs.' SUF ¶ 23; Decl. of Ann Hill in Opp'n to Defs.' Mot. for Summ. J. ("Hill Decl.") ¶ 12.) Plaintiff formerly operated a Java City food and beverage concession at the Sacramento Airport. (Defs.' SUF ¶ 33.) Plaintiff first began operating a food and

beverage concession at the Sacramento Airport in 1990 when she opened Ann Hill's Airport Bakery Deli. Id. ¶ 37. Plaintiff began operating her Java City concession at the airport in October of 1998, after she entered into a sublease with Host that authorized her to operate the business at the airport. Id. ¶¶ 38-39. This sublease prescribed July 31, 2009 as the expiration date. Id. ¶ 39. Plaintiff's Java City concession was located on the upper level of Terminal A (one of two passenger terminals at the Sacramento Airport) between airline arrival/departure gates. Id. ¶¶ 10-11.

The County receives federal funding for the Sacramento Airport and, therefore, SCAS is required to implement an Airport Concession Disadvantaged Business Enterprises program ("ACDBE program") at the Sacramento Airport pursuant to 49 C.F.R. section 23, et seq. Id. ¶¶ 182-183. This program is intended to promote participation of business owners who are both "socially and economically" disadvantaged in the operation of airport concessions. See 49 C.F.R. §§ 23.1, 23.3. When Plaintiff operated concessions at the Sacramento Airport, she was certified as a Disadvantaged Business Enterprise ("DBE") under the ACDBE program. (Defs.' SUF ¶ 34.)

In 2006, SCAS began evaluating "the terms of its biggest contracts" under which concessionaires were operating at the Sacramento Airport. Id. ¶ 51. "SCAS initiated this review for multiple reasons, including, the anticipated construction of the new Central Terminal B, the upcoming expiration of multiple major concession agreements at the Airport, and its belief that it was not performing comparably to similar airports." Id. ¶ 52. "Sometime in 2006, SCAS discovered that it was performing below the industry standards for airports of comparable size and traffic amounts. SCAS wanted to improve its performance by upgrading

the concession offerings in the Terminals and increasing its sales and revenues." Id. ¶ 55. "During this same time, Host expressed a desire to extend its Agreement with the Airport so that it could maintain operations in Terminal A at least until the opening of the new Central Terminal B." Id. ¶ 55.

"In late 2006, the County and Host began discussing extension of the existing lease, and the need for refreshing and improving the concession concepts offered at the airport." Id. ¶ 64. Subsequently, a proposal was made to improve several concessions at the Sacramento Airport, which included reconcepting Plaintiff's Java City concession to a Starbucks Coffee concession. Id. ¶¶ 74-76. The parties dispute how Java City performed financially compared to other food and beverage concessions in Terminal A before the proposal was made to reconcept Java City. (Reply to Opp'n to Separate Statement of Undisputed Material Facts in Supp. of Mots. for Summ. J. and/or Partial Adjudication of Issues by Defs. ("Reply to SUF") ¶¶ 102-104.) Host and the County eventually agreed in 2007 to an amendment of their existing contract ("Amendment"); the Amendment included an agreement to convert Plaintiff's Java City concession into a Starbucks. (Defs.' SUF ¶ 97.) The decision to replace Java City with a Starbucks was one of thirteen concession improvements in the Amendment, ten of which involved food and beverage concessions. Id. ¶ 97. Four of the food and beverage concessions selected for reconcepting were at one time classified as DBEs; Plaintiff's Java City concession was one of the four. Id. ¶ 99. "The reconcepting of the Java City operated by Plaintiff was just one of the many revisions contemplated by the . . . Amendment and was not a focal point or a highlight of the negotiations or final terms." Id. ¶ 100. "At some

point, SCAS and Host looked at all of the concessions in both terminals of the Airport and evaluated their performance." Id. ¶ 101.

In order to begin converting Plaintiff's Java City into a Starbucks before the lease Plaintiff had with Host expired on July 31, 2009, the Amendment required Host to work "in earnest" to buy out Plaintiff's lease. (Decl. of Amanda L. Butts in Supp. of Defs.' Mot. for Summ. J. ("Butts Decl.") Ex. 11.) The Amendment also required Host to pay the County $15,000 per month in liquidated damages if Host did not purchase the remainder of Plaintiff's lease by July 1, 2007. Id.

Plaintiff "received the first offer of a buyout from Host on March 8, 2007. At that time, Host notified Hill that her sublease would not be renewed." (Defs.' SUF ¶ 121.) "Host informed Hill that the concessions on the Southwest Airlines concourse of Terminal A were being renovated to bring in more nationally recognized brand [sic], and that there was no extension option available on her sublease agreement and that her sublease would expire by its terms on July 31, 2009." Id. ¶ 122. "On April 25, 2007, Hill rejected Host's initial buyout offer." Id. ¶ 125. "On January 3, 2008, Host increased the cash payment offer to buyout the [then] remaining 18 months of Hill's contract to the sum of $500,000.00. Host again reiterated that Hill's sublease would expire by its terms in July 2009." Id. ¶ 122. "Hill again rejected Host's offer." Id. ¶ 128. Host and Plaintiff failed to reach a buyout agreement.

Therefore, Plaintiff sought to directly lease the space for Java City from the County. (Hill Decl. ¶ 12.) The County refused to enter into a direct lease with Plaintiff, because "at the time" the "Amendment was negotiated and adopted there were no opportunities for direct leasing of a food and beverage concession at the Airport." (Defs.' SUF ¶ 139.)

5

1      Prior to when Plaintiff rejected Host's last buyout offer, Plaintiff, "[o]n May 7, 2008, . . . requested new signage and menu boards for the Java City through the County. The requested new menu board, menu items and updated pricing were approved along with one proposed sign." (Defs.' SUF ¶ 134.) Plaintiff also requested a "freestanding sign" that "was not approved due to operational and safety reasons in that it posed a trip hazard and could be easily knocked down." Id. Plaintiff also avers that the County did not inform her of an opportunity to place coupons advertising her business in a "'Preflight Checklist' brochure." (Hill Decl. ¶ 15). However, Plaintiff admits she was listed in the "'Pre Flight Checklist' [brochure] which included advertising for various Airport vendors, including Plaintiff's Java City," and fails to show that any vendor had coupons placed in the "Preflight Checklist" brochure. (Defs.' SUF ¶ 143).

       Plaintiff remained the operator of Java City until her sublease with Host expired on July 31, 2009. Id. ¶ 206. Although Plaintiff ceased operating her Java City business at that time, Host began operating a Java City food and beverage concession in the same place where Plaintiff's Java City concession was located. Id. ¶¶ 205, 208. Host proposed reconcepting this Java City to a La Bou Bakery & Cafe instead of a Starbucks in December of 2009. Id. ¶ 209. SCAS has requested additional information from Host concerning why it believes La Bou is a better concept than Starbucks. Id. ¶ 210.

       Plaintiff alleges in her Complaint that she was subjected to racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964 (42 U.S.C. section 2000d), and the Equal Protection Clause of the California Constitution. Further, Plaintiff alleges that Defendants' actions

6

constitute intentional infliction of emotional distress under California law. Lastly, Plaintiff seeks a writ of mandate under California Code of Civil Procedure section 1085 that would compel Defendants to comply with federal regulations requiring them to promote participation of socially and economically disadvantaged business concessionaires at the airport.

### III. Discussion

**A.  Equal Protection Clause of the Fourteenth Amendment**

"The essence of [a federal] equal protection violation on racial grounds lies in the *intent or motive to discriminate*." Flores v. Pierce, 617 F.2d 1386, 1389 (9th Cir. 1980) (emphasis added). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (internal citations and quotations omitted).

If a government action or policy has a discriminatory impact on an identifiable group, the intent requirement will only be satisfied through specific evidence tending to "show some invidious or discriminatory purpose underlies the policy." Lee, 250 F.3d at 686. If evidence of discriminatory impact is explainable on grounds other than race, the impact by itself will be insufficient to show discriminatory intent; instead, "the [c]ourt must look to *other evidence*" to determine if intentional discrimination exists. Vill. of Arlington Heights v. Metro. Hous. Devel. Corp., 429 U.S. 252, 266 (1977) (emphasis added). "[O]ther factors to be considered in determining whether there is evidence of intent or purpose to discriminate include: the historical background of the decision, the sequence of events leading up to the

1  decision, and any relevant legislative or administrative history." <u>The</u>
2  <u>Comm. Concerning Cmty. Improvement v. City of Modesto</u>, 583 F.3d 690, 703
3  (9th Cir. 2009).

4  Defendants argue Plaintiff has not met her burden of
5  presenting evidence that any Defendant had the intent or motive to
6  racially discriminate against her. Plaintiff counters that the following
7  evidence demonstrates Defendants' discriminatory intent: the County,
8  through the Amendment with Host, targeted Plaintiff's Java City
9  concession for reconcepting (Pl.'s Opp'n 11:14-15.); the County refused
10 to enter into a direct lease with Plaintiff to operate Java City even
11 though the County permitted a direct lease for Vino Volo to operate in
12 the same terminal <u>Id.</u> 12:11-27; the Amendment targeted "minority-owned"
13 concessionaires for reconcepting <u>Id.</u> 13:23-24; Defendants selected
14 Plaintiff's Java City concession for reconcepting even though she
15 outperformed other concessions that were not selected for reconcepting
16 in the Amendment <u>Id.</u> 17:17-18:21; and Defendants denied Plaintiff's
17 request for a freestanding advertising sign and did not promote Java
18 City in an airport brochure to the same extent that they promoted other
19 concessions. (Hill Decl. ¶¶ 10, 15.)

20 However, the uncontroverted facts show that the County
21 concluded in 2006 that the concessions at the Sacramento Airport were
22 underperforming financially, and that Defendants and Host sought to
23 improve the financial performance of concessions by refreshing and
24 improving the concessions. (Defs.' SUF ¶¶ 52, 64.) The County and Host
25 agreed to amend their existing contract in 2007. <u>Id.</u> ¶ 97. Further, the
26 decision the County and Host made to replace Plaintiff's Java City with
27 a Starbucks was one of thirteen concession-improvement decisions in the
28 Amendment, ten of which involved food and beverage concessions and only

four of which involved DBEs. Id. ¶¶ 97, 99. Therefore, notwithstanding Plaintiff's evidence showing that Java City outperformed other concessions financially, the decision to reconcept Java City has been explained on non-racial grounds. Id. ¶ 64.

The County's decision not to directly lease with Plaintiff has also been explained on non-racial grounds. The County directly leased with Vino Volo *before* the County and Host agreed to the Amendment; whereas, Plaintiff requested a direct lease from the City *after* the Amendment. (Pl.'s Opp'n 5:28-6:1; Hill Decl. ¶ 12.) The uncontroverted facts show that after the Amendment was adopted, the County did not have "opportunities for direct leasing of a food and beverage concession." (Defs.' SUF ¶ 139.)

The County's decision not to approve Plaintiff's requested advertising sign has also been explained on grounds other than race. The County determined that the freestanding sign Plaintiff requested would pose an operational and safety hazard because of its location. Id. ¶ 134. Further, it is uncontroverted that Plaintiff had the same advertising opportunities at the airport as did all food and beverage concessionaires. (Defs.' SUF ¶ 145.)

Therefore, Defendants have shown the actions they took were based on reasons other than Plaintiff's race. However, Plaintiff has presented evidence that certain County employees made false statements earlier in this proceeding concerning the amount of control the County exercised over Host and the profitability of Plaintiff's Java City concession at the airport, which Plaintiff argues are pretextual to mask intentional racial discrimination. (Pl.'s Opp'n at 14-18.) "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional

9

discrimination, and it may be quite persuasive." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 147 (2000). However, the evidence on which Plaintiff relies does not controvert the "abundant and uncontroverted independent evidence that no [racial] discrimination had occurred." Id. at 148.

Since Plaintiff has not controverted Defendants' evidence that their actions are explainable on non-racial grounds, Defendants' summary judgment motion on Plaintiff's federal equal protection claim is granted.

**B.   Title VI, 42 U.S.C. section 2000d**

Defendants also seek summary judgment on Plaintiff's claim alleged under Title VI of the Civil Rights Act of 1964, codified in 24 U.S.C. section 2000d et seq. Title VI prescribes that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI only forbids intentional discrimination. Alexander v. Sandoval, 532 U.S. 275, 281 (2001)(citing Alexander v. Choate, 469 U.S. 287, 293 (1985)). Plaintiff's Title VI claim fails for the same reasons her federal equal protection claim fails.

**C.   Equal Protection Clause of the California Constitution**

Further, Defendants seek summary judgment on Plaintiff's claim alleged under equal protection provisions of the California Constitution. See Cal. Const. Art. 1, § 12 ("A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws."); see also Cal. Const. Art. 1, § 31(a) ("The state shall not discriminate against, or grant preferential

treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting."). California's "constitutional guarantee of equal protection is substantially similar to that contained in the United States Constitution. Federal and state analysis of equal protection claims is substantially the same." <u>Pro-Family Advocates v. Gomez</u>, 46 Cal. App. 4th 1674, 1685 n.13 (1996). Under the California Constitution, "[p]roof of discriminatory intent or motive is necessary to sustain an equal protection clause challenge." <u>Barnes-Wallace v. Boy Scouts of Am.</u>, 275 F. Supp. 2d 1259, 1281 (S.D. Cal. 2003)(analyzing California and federal equal protection challenges simultaneously since analysis is the same). Since Plaintiff has not provided this proof, Defendants' request for summary judgment of Plaintiff's equal protection claim under the California Constitution is granted.

**D.    Intentional Infliction of Emotional Distress**

Defendants also seek summary judgment of Plaintiff's intentional infliction of emotional distress claim alleged under California Law. Under California law:

> The elements of the tort of intentional infliction of emotional distress are: ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct...." Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.] The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'

<u>Potter v. Firestone Rubber & Tire Co.</u>, 6 Cal. 4th 965, 1001 (1993) (citing <u>Christensen v. Superior Court</u>, 54 Cal. 3d 868, 905-06 (1991)).

The record does not support Plaintiff's contention that she has been subjected to any conduct that "was sufficiently extreme and outrageous to support liability for intentional infliction of emotional distress." Id. Therefore, Defendants' motion for summary judgment on this claim is granted.

**E.    Writ of Mandate under California Code of Civil Procedure section 1085**

Further, Defendants argue they prevail on Plaintiff's request for relief under California Code of Civil Procedure section 1085 ("section 1085"), since relief under section 1085 is not available in federal court, and even if it is available the Amendment and the County's ACDBE program are in compliance with applicable federal regulations. The issue of whether section 1085 is available to Plaintiff in federal court need not be decided since the factual record does not support Plaintiff's argument that she is entitled to a court order compelling Defendants to provide her with specific relief. Specifically, Defendants' following evidence is uncontroverted:

> On August 4, 2008, the [Federal Aviation Administration] informed Hill and SCAS that it did not find that either Host or SCAS discriminated against Hill because of her race, that the Airport conducted outreach programs in accordance with the regulations, and that the [Amendment] complies with applicable regulations. The FAA did find that the Airport failed to provide a Disadvantaged Business Enterprise Liaison Officer ("DBELO"), as required by the regulations, for a short period of time, but that SCAS had remedied the situation. Further, the FAA concluded that the decision of whether or not to renew Hill's contract is a business decision between Hill and Host, to which the FAA did not have jurisdiction.

(Defs.' SUF ¶ 177.) Plaintiff admitted this evidence is undisputed. (Pl.'s Resp. to Am. Statement of Material Fact in Supp. of Defs.' Mot. for Summ. J. and in the Alternative Summ. Adjudication ¶ 177.) However,

Plaintiff argues in her opposition brief against this evidence without supporting her argument with evidence or legal authority. But "mere argument does not establish a genuine issue of material fact to defeat summary judgment. [Nor may a] party opposing a properly supported motion for summary judgment . . . rest upon . . . mere allegations . . . ." MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993). Since Plaintiff has not shown that a court order compelling Defendants to provide her with specific relief is appropriate, this portion of Defendants' motion is granted.

### IV. CONCLUSION

For the stated reasons, Defendants' motion for summary judgment is granted, and judgment shall be entered in favor of Defendants.

Dated: October 27, 2010

GARLAND E. BURRELL, JR.
United States District Judge